## National Fuel Gas Distribution Corporation v. Greenland Construction Inc.

*Mark E. Mioduszewski,* for plaintiff.
*John M. Speidel,* for defendant.

FORADORA, *P.J.,* April 10, 2007—

INTRODUCTION

Now before the court are preliminary objections filed by defendant Greenland Construction Inc. Greenland therein demurs to the allegations appearing in the complaint filed by defendant National Fuel Gas Distribution

Corporation, claiming that because the parties' respective duties are defined by statute, National Fuel cannot maintain a cause of action sounding in general negligence. Greenland further argues that because its averments fail to implicate the relevant statute, National Fuel cannot pursue an action in negligence under the statute. National Fuel disagrees with both propositions, contending that the statute does not preclude, but merely supplements, common-law negligence, and arguing that the complaint avers facts sufficient to sustain a claim that Greenland violated its statutory duties. After receiving briefs from both parties, the court held oral arguments on March 30, 2007.

## FACTUAL AND PROCEDURAL HISTORY

In its sole count for negligence, the complaint sets forth the following factual averments: During the performance of excavating work in connection with a sewer project in Brockway, Jefferson County, Pennsylvania, Greenland properly placed a "line locate request" through the Pennsylvania One Call System on December 2, 2004. Pursuant to that request, National Fuel went to the excavation site and, placing flags that denoted the presence of a buried three-inch plastic gas line, accurately marked its line. While excavating near those flags, Greenland encountered a three-inch steel line and, assuming that the steel line somehow contained the plastic line (an impossibility that Greenland should have recognized, according to National Fuel), neglected to contact National Fuel about the discrepancy.

Proceeding upon its assumption, continues the complaint, Greenland resumed excavation using powered

excavation equipment and completely severed National Fuel's three-inch plastic mainline, which was located approximately 16 to 18 inches from the uncovered three-inch steel line. According to National Fuel, Greenland was negligent for continuing to assume that the plastic line lay inside the steel line and for continuing its excavation work without contacting National Fuel or otherwise investigating the discrepancy after finding the steel line where the flags indicated a plastic line.

## DISCUSSION

In *Swisher v. Pitz,* 868 A.2d 1228, 1230 (Pa. Super. 2005), the Superior Court specified the following standard for determining whether to grant a demurrer:

"When reviewing the dismissal of a complaint based upon preliminary objections in the nature of a demurrer, we treat as true all well-pleaded material, factual averments and all inferences fairly deducible therefrom. Where the preliminary objections will result in the dismissal of the action, the objections may be sustained only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections."

The outcome of Greenland's objections depends upon a fair reading of the applicable statute.

The One Call Act: Excavation and Demolition, 73 P.S. §176 et seq., does indeed impose duties upon both facility owners and contractors conducting excavation op-

erations. Among other duties, facility owners must "mark, stake, locate or otherwise provide the position of the facility owner's underground lines" within certain parameters, section 177(5)(i), while contractors must exercise due care and take "all reasonable steps necessary to avoid injury or otherwise interfere with all lines where positions have been provided to the contractor by the facility owners." Section 180(4). Because violation of its provisions constitutes a summary offense, the Act may be enforced by the attorney general, any district attorney, or the Department of Labor and Industry, in consultation with the attorney general. Section 182.2(a). The Act articulates the potential penalties to which a violator may be subject. Section 182.2(b)-(d).

The Act also speaks to civil remedies and specifies that its provisions "shall not affect any civil remedies for personal injury or property damage, except as otherwise specifically provided for in this Act." Section 182.2(e). Because the Act nowhere purports to otherwise limit claims for property damage, the court can only conclude that the legislature intended to supplement, not supplant, the existing law, including the common-law body of precedent surrounding negligence.

When giving effect to a statute, the court must integrate all of its provisions to ascertain and effectuate the intention of the legislature. 1 Pa.C.S. §1921(a). The best indication of that intent is the plain language of the statute. *Walker v. Eleby,* 577 Pa. 104, 123, 842 A.2d 389, 400 (2004). The plain language of *this* statute declares that all civil remedies for personal injury and property damage actions arising from improperly performed excavation work remain available unless specifically voided by

the Act. Assuming the Act's nonexistence, National Fuel could recover at common-law if it could prove that Greenland owed it a duty to carefully excavate at the excavation site; that Greenland breached that duty; and that Greenland's breach resulted in the severed plastic line and subsequent damages asserted by National Fuel. See *Farabaugh v. Pennsylvania Turnpike Commission,* 590 Pa. 46, 60, 911 A.2d 1264, 1272-73 (2006) ("In any case sounding in negligence, a [complaining party] must demonstrate: (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the [complaining party]"). Not only does the Act not eliminate that common-law cause of action, but section 182.2(e) affirmatively protects it.

That conclusion finds support elsewhere in the Act. Section 180, defining the duties of contractors, twice indicates that contractors owe a duty of care beyond the scope of the Act. "The contractor who has complied with the terms of this Act *and who was not otherwise negligent"* shall not be subject to liability, says the statute. Section 180(12)(i). (emphasis added) The subparagraph immediately following then provides an offset to liability "[w]here a contractor has failed to comply with the terms of this Act *or was otherwise negligent,"* but where the facility owner was negligent, as well. Section 180(12)(ii). (emphasis added)

Reading the Act as a whole, the court cannot reasonably conclude that the legislature intended to eliminate a common-law negligence cause of action for conduct described in the statute. Rather, the above provisions clearly entertain the possibility that an entity could com-

ply with the Act but still be "otherwise negligent," *i.e.,* they imply that entities engaged in excavation procedures could wrong one another in more than one way under the law.[1] The legislature merely attempted to regulate the conduct detailed in the statute and otherwise penalize actions in violation of what it deemed to be appropriate excavation procedures.

The court agrees, however, that the complaint as it exists does not adequately assert a cause of action under the Act. In its averments, National Fuel mentions that Greenland placed a "line locate request" through the Pennsylvania One Call System and that National Fuel responded by accurately marking and identifying its three-inch plastic line. National Fuel asserts these alleged facts under "Count I—Negligence"—the only count contained in the complaint. Nowhere in that document, however, does National Fuel actually mention the Act or any provisions thereof. Nowhere does it indicate that it intends to hold Greenland liable for both common-law negligence *and* violation of the Act.

Under our Rules of Civil Procedure, the pleadings in a case must apprise a defendant of the asserted claim and summarize the facts essential to support the claim. *Krajsa v. Keypunch Inc.,* 424 Pa. Super. 230, 235, 622 A.2d 355, 357 (1993). According to *Philadelphia County Intermediate Unit, No. 26 v. Department of Education,* 60 Pa. Commw. 546, 432 A.2d 1121 (1981), that means that pleadings must be specific enough to allow the re-

---

1. The same language can be found under 73 P.S. §179, where the Act identifies designers' duties and indicates that they, too, can fail to comply with the Act *and* be otherwise negligent. Clearly the words "otherwise negligent" were not meaningless anomalies.

sponding party to prepare a defense. *Id.* at 552, 432 A.2d at 1125 (citing *Commonwealth v. City of Jeannette,* 9 Pa. Commw. 306, 305 A.2d 774 (1973)).

Admittedly, the facts essential to support claims for both general negligence and violation of the Act appear to be largely the same. However, a complaint should not require the opposing party to guess what theories of liability the complainant intends to advance. Greenland has a legal right to know whether it must defend itself only against a common-law claim of negligence or also against a claim that it violated 73 P.S. § 176 et seq. Accordingly, National Fuel must, if it intends to proceed upon the latter theory, better articulate its statutory claim in its complaint.

## ORDER

And now, April 10, 2007, it is hereby ordered and decreed that

(1) Defendant's preliminary objections are denied in part and granted in part.

(a) Plaintiff may proceed upon a common-law theory of negligence.

(b) As drafted, plaintiff's complaint is insufficient to support a claim for liability under 73 P.S. § 176 et seq.

(2) Plaintiff shall have 20 days to amend its complaint to include a claim under the above-mentioned statute.